In re ADOPTION By Walter Lee McELROY and Virginia Lee W. McElroy.

Ex parte Richard Louis TAYLOR,

v.

Mr. and Mrs. Walter Lee McELROY.

Court of Appeals of Tennessee, Eastern Section.

Feb. 7, 1975.

Certiorari Denied by Supreme Court April 21, 1975.

Thomas, Leitner, Mann, Warner & Owens, Chattanooga, for appellants.

Crutchfield, Moore & Jenkins, Chattanooga, for appellee.

## OPINION

SANDERS, Judge.

The Defendants have appealed from a decree of the Chancery Court denying their petition to adopt an infant child and awarding her custody to the natural father.

The Defendants, Walter Lee McElroy and wife, Virginia Lee W. McElroy, filed a petition in the Chancery Court of Hamilton County to adopt an infant child which was born in Korea.

The Plaintiff, Richard Louis Taylor, filed suit in the same court alleging that he was the natural father of the child and that he had not consented to the adoption. He asked that the Defendants be enjoined from adopting the child and asked that her custody be given to him.

The Chancellor treated the complaint of the Plaintiff as an intervening petition in the adoption proceeding and heard the case on oral testimony. The Chancellor found the issues in favor of the Plaintiff and dismissed the Defendants' petition to adopt the child and awarded her custody to the Plaintiff.

The Defendants have appealed to this court and assigned error as follows:

1. The Court erred as a matter of law in holding that the Act of State Doctrine did not apply in this case.

2. The Court erred as a matter of law in refusing to recognize the Act of a Foreign State and in exercising jurisdiction on the Act of a Foreign State which is reserved solely to the Executive Branch of the United States Government by the United States Constitution (Art. II).

3. The Court erred in reaching its conclusion concerning the identification of the McElroys' child; and in holding that Mr. Taylor had parental rights in an illegitimate child in the absence of testimony from the natural mother, and in further holding that Mr. Taylor had not abandoned or otherwise surrendered his alleged parental rights.

The proof shows that the Plaintiff was assigned to duty with the United States Army in Korea in April of 1966. In August of that year he met a Korean girl named Kim Kyong Cha and shortly thereafter they started living together on a permanent basis. In April, 1967, the Plaintiff was transferred back to the United States. At the time of his transfer Kim Kyong Cha was six to seven months pregnant. On June 6, 1967, she gave birth to a baby girl. The child was named Kimta Francoise Taylor.

In February, 1968, the Plaintiff returned to Korea for the purpose of marrying Kim Kyong Cha and legitimating their child. In March, 1968, the Plaintiff and Kim Kyong Cha were married in Seoul, Korea, and their daughter, Kimta Francoise Taylor, was issued an American passport as a United States citizen.

It was the intention of the Plaintiff to bring his wife and daughter back to the States with him but due to delay in issuing a visa and passport to his wife, the Plaintiff returned to the States without them in April, 1968, with the understanding that

they would follow as soon as the papers could be processed.

The proof indicates that after the Plaintiff returned to the States his wife lost interest in coming here. The Plaintiff kept up his correspondence with his wife and it was her insistence that she could not get a visa. The Plaintiff had his last correspondence from his wife in June, 1970.

In March, 1971, the Plaintiff learned that in July, 1970, his wife had abandoned their child. She had left the child and gone to a store and was never heard from again.

After this the Plaintiff had considerable correspondence with friends and acquaintances in Korea concerning his child and learned that the people who had been taking care of her since she was deserted by her mother were considering placing her in an orphanage for adoption.

At about this juncture in time the Defendants had been in contact with Holt Adoption Program in Creswell, Oregon, which is a non-profit agency devoted to handling the adoption of orphan children in Korea by American citizens.

The Defendants are black and were interested in adopting a mixed-blood Korean and black orphan from Korea. The Plaintiff is also black, which made his daughter eligible for adoption by the Defendants.

A Korean orphan girl of mixed Korean and black blood whose date of birth was shown to be the same as that of the Plaintiff's daughter, was processed for adoption from the Holt Adoption Program in Seoul, Korea, and sent to the Defendants' home in Chattanooga, but her name was given as Kim Ji Yung.

The factual issue in this litigation is whether or not Kim Ji Yung is, in fact, Kimta Francoise Taylor, the daughter of the Plaintiff.

The proof shows that there are many orphaned, abandoned children in Korea. This is particularly true of children of ille-gitimate birth who have been sired by servicemen stationed in Korea. Under social standards of Korea a mixed-blood child, whether it be Korean and Caucasian or Korean and black, is not accepted into their society and is ostracized by the Korean people. This is responsible for many unwed mothers' deserting their mixed-blood children.

When those abandoned children are found they are usually turned over to the police and placed in an orphanage and then placed for adoption.

The records of Holt Adoption Program show that Kim Ji Yung was found on February 15, 1971, in the An Yang Eup area of Seoul, which is the same area in which Kimta Francoise Taylor had been living, and she was placed with Holt Adoption Agency for adoption as a mixed-race child. The date of birth is shown to be June 6, 1967, but the record is not clear as to how this information was obtained. Since the parents of the child were unknown, it was given the family name of Kim Ji Yung.

Korea has a civil code of procedure governing the adoption of children by non-citizens and these procedures were followed in the placement of Kim Ji Yung for adoption by the Defendants.

The chronology of this procedure was as follows: On July 22, 1971, the family name of Kim Ji Yung was established. On July 24, 1971, Deuk Hwang Kim was appointed as her guardian by the Mayor of the Special City of Seoul. On the same date he executed a consent for her to be immigrated to the United States for adoption by suitable parents. In this same document he transferred to the Holt Adoption Program, Inc., all of his rights as guardian, including the right to place her in an adoptive home and to consent to her adoption.

On July 26, 1971, the Chief of the Ma Po District Office, Seoul, Korea, issued the following certificate upon the request of the Holt Adoption Program, Inc.: "This is to certify that the following-de-

scribed child is a legal orphan, abandoned by its parents, and that said child is a non-successive orphan in accordance with a census register provided by his district office."

On February 14, 1972, Kim Ji Yung was issued an IR–4 Visa (Orphan to be adopted in the United States) and on February 24, 1972, she left Korea for the home of the Defendants. She was met by the Defendants in Chicago and taken to their home in Chattanooga.

During this interval of time the Plaintiff had continued correspondence with people and agencies in Korea endeavoring to make arrangements to have his daughter brought to the United States. He had purchased an airline ticket for her from Pan American World Airways and had sought their assistance. In March, 1972, Pan Am wrote to the Plaintiff advising him that an attorney in Seoul with whom the Plaintiff had been corresponding informed them the latter part of December that his daughter was at Holt Adoption Agency.

The Plaintiff then contacted Holt Adoption Agency in Creswell, Oregon, to ascertain whether or not they had his daughter or had placed her for adoption. He was told they would check. He also sent them a picture of his daughter and a copy of her birth certificate but received negative results.

The Plaintiff then wrote to his congressman and to President Nixon soliciting their support in locating his daughter.

As a result of these efforts his congressman received a letter from the Department of State dated April 3, 1972, which read, in part, as follows: "The Department of State has been informed by the American Embassy at Seoul, Korea, in response to its recent inquiries in this matter, that the child was issued an IR–4 Immigrant Visa (Orphan to be adopted in the United States) on February 14, 1972, in the name of Kim Ji Yung and left Korea on February 24 destined for her adoptive parents, Mr. and Mrs. Walter Lee McElroy, 100 Arlington Terrace, Chattanooga, Tennessee. A member of my staff informed Mr. Taylor of the foregoing by telephone on March 30."

It was this information which precipitated this litigation.

It is the insistence of the Defendants that there was no competent proof that Kim Ji Yung was one and the same person as Kimta Francoise Taylor.

We cannot agree. The Plaintiff identified the photograph of the child, furnished by the Holt Adoption Agency, as his daughter, and when he saw the child he further recognized her as his daughter.

The Court filed a memorandum opinion in which he found, in part, as follows: "Some question has been raised whether or not the child before the Court is the same child as the natural child of Mr. Taylor; but the Court having personally viewed the child in open court and having viewed many photographs which are exhibited in evidence taken over a period of years from the birth of the child and from the testimony and other documents in the record, is firmly convinced that the natural child of Mr. Taylor is the same child as that before the Court."

The Court also said in its memorandum opinion: "The Court finds that the petition for adoption by the McElroy's must be dismissed because the child sought to be adopted by them is the natural child of Richard Louis Taylor and his former Korean wife, Kyong Cha Taylor, and that the parental rights of Richard Louis Taylor have not been lawfully terminated. Upon this point the Court finds specifically that the father, Richard Louis Taylor, never at any time abandoned said child nor did he ever voluntarily surrender said parental rights nor in any way relinquish said rights voluntarily."

 We think the evidence supports the findings of fact by the Chancellor and we concur (except, of course, we did not see the child or the Plaintiff).

Defendants insist in their first two assignments of error that it was error for the Chancellor to fail to apply the "Act of State Doctrine."

■ We cannot agree. In order for action taken by a foreign government to fall within the "Act of State Doctrine," the action must have been taken by the sovereign nation rather than a subdivision of that government. 12 A.L.R.Fed. 339.

■ The only action taken in Korea relating to the case at bar was administrative action by officers of the City of Seoul.

In support of Defendants' third assignment of error they argue, "The testimony concerning the identification of the McElroys' child as being Taylor's reported illigitimate child is hearsay and the Chancellor's decision should be reversed in the absence of testimony from the child's mother identifying the father and in the absence of admissible evidence conclusively identifying the child."

■ Again, we cannot agree. The proof shows the Plaintiff married the child's mother after its birth and under Korean law the child was legitimized by this marriage. After the child was legitimized we think she stands in the same posture as if she were of legitimate birth.

■ By the same token, we think the Plaintiff could testify as to their parent and child relationship. Also, the Plaintiff testified that upon his return to Korea to marry Kim Kyong Cha she told him that Kimta Francoise Taylor was his daughter and we think this is competent evidence as an exception to the hearsay rule relating to pedigree. Swink v. French, 79 Tenn. 78 (1883); 29 Am. Jur.2d, Evidence, § 508.

The assignments of error are overruled. The decree of the Chancellor is affirmed and the cost of this appeal is taxed to the Appellants.

PARROTT, P. J. (E.S.), and GODDARD, J., concur.